**UNITED STATES of America,**

v.

**Stateson Clarence FRANCOIS, also known as Tyrone Wallace,**

**John Brugada Holmes, also known as Timothy Robbins, also known as Jay,**

and

**Daniel Dorcely, Defendants.**

**Criminal No. 01–454(RBW).**

United States District Court, District of Columbia.

Dec. 18, 2003.

Larry Allen Nathans, Bennett & Nathans, L.L.P., Baltimore, MD, Michael Stuart Blumenthal, Landover, MD, Nikki U. Lotze, Roberts & Wood, Riverdale, MD, Tony W. Miles, Federal Public Defender for D.C., Bravitt Cola Manley, Jr., Michelle M. Peterson, Federal Public Defender for D.C., Washington, DC, Gregory Bruce English, English & Smith, Alexandria, VA, Robert Charles Bonsib, Marcus & Bonsib, Greenbelt, MD, for Defendants.

Howard R. Sklamberg, Jonathan Niles Rosen, Patrick Rowan, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter came before the Court on the defendants' motions for severance based upon the government's notices of intent to introduce several statements at trial of the defendants that reference their co-defendants. While the Court made numerous oral rulings at the conclusion of the hearings on the motions, it reserved issuing a ruling as to one of these statements. A brief recitation of the alleged circumstances regarding that statement is a necessary predicate to addressing whether this statement is admissible at a joint trial of the defendants pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny.

### I.  *Facts*

The defendants in the above-captioned case have been charged with several criminal offenses arising from an alleged scheme that resulted in approximately one million dollars of United States Department of Education ("DOE") funds being diverted from the source for which the funds had been appropriated to a business

bank account of one of the defendants. The government has proffered that it will be able to introduce bank records demonstrating that on December 20, 1999, defendant Daniel Dorcely opened a business economy checking account in the name of Dany Enterprises at a branch office of the Bank of America (formerly NationsBank) located in Adelphi, Maryland. *See* Government's Exhibit List, Government's Exhibit ("Gov't Ex.") 12–18; August 21, 2003 Superseding Indictment, Count I ¶ 5. On March 15, 2000, defendant Dorcely is alleged to have added a second individual to the account who was identified as "Tyrone Wallace," *see* Gov't Ex. 21–24; August 21, 2003 Superseding Indictment, Count I ¶ 19 (Overt Acts ¶¶ 4–6), which the government asserts is actually an alias used by defendant Stateson Francois. *See* August 21, 2003 Superseding Indictment, Count I ¶ 2. According to the government, between March 27, 2000 and March 31, 2000, an unknown coconspirator employed by the DOE arranged to have over $925,000 from the Department's Impact Aid Program ("Impact Aid") wired to the Dany Enterprises account, instead of to the Bennett County School District's bank account in South Dakota, which had actually been awarded a grant for the funds by the DOE.[1] *See* August 21, 2003 Superseding Indictment, Count I ¶¶ 18(c)-(d), 19 (Overt Acts ¶¶ 7–8). On March 31, 2000, defendant Francois is alleged to have requested a withdrawal of funds from the Dany Enterprises account, through the use of a Bank of America cashier's check in the amount of $46,900. *Id.* ¶ 19 (Overt Act ¶ 10). On that same day, defendants Francois and Holmes are accused of going to the Capitol Cadillac automobile dealership in Maryland, whereupon defendant Holmes used the $46,900 cashier's check to purchase a 2000 Cadillac Escalade. *Id.* ¶ 19 (Overt Acts ¶¶ 11–18). Over the next several days, defendant Francois and unknown co-conspirators are accused of withdrawing additional funds from the Dany Enterprises account and, in some instances, making purchases with those funds. *Id.* ¶ 19 (Overt Acts ¶¶ 19–25, 29). On April 4, 2000, defendant Francois is alleged to have returned to a branch office of Bank of America and requested and received two more cashier's checks in the amount of $50,000 payable to "Wilson Powell Lincoln Mercury," and in the amount of $48,000 payable to "Lustiene Chevrolet." *Id.* ¶ 19 (Overt Acts ¶¶ 32–33). On the same day of these withdrawals, defendants Francois and Holmes are accused of going to the Wilson Powell Lincoln Mercury automobile dealership in Maryland, where defendant Francois presented the $50,000 cashier's check for the purchase of a 2000 Lincoln Navigator. *Id.* ¶ 19 (Overt Acts ¶¶ 39–45). And, later that same day, defendants Francois and Holmes are alleged to have gone to the Lustine Chevrolet automobile dealership in Maryland and presented the $48,000 cashier's check in the name of "Lustiene Chevrolet" for the purchase of a Chevrolet Corvette. *Id.* ¶ 19 (Overt Acts ¶¶ 46–49). However, because the name of the dealership had been misspelled ("Lustiene" instead of "Lustine"), the defendants were purportedly unable to purchase the vehicle.[2]

---

1. The Impact Aid DOE grant program was created to assist elementary and secondary education in school districts that are financially impacted by the presence of tax-exempt federal properties, such as Indian lands and military bases. *See* August 21, 2003 Superseding Indictment, Count I ¶ 8. Apparently, these school districts lose a significant amount of revenue because these tax-exempt properties are located within their boundaries and the Impact Aid is intended to help replace the lost revenue. *Id.*

2. The government alleges that the defendants returned to the Bank of America office the next day to have the cashier's check re-issued

During the course of the investigation by the Federal Bureau of Investigation ("FBI") into the diversion of the DOE funds, which lasted approximately two years, law enforcement officers spoke to the defendants on numerous occasions. These interviews serve as the basis for many of the statements that the government has sought to introduce at the joint trial of the defendants,[3] including an April 18, 2000 statement, which is the subject of this Opinion. Specifically, on April 18, 2000, defendant Dorcely was interviewed by federal law enforcement agents, one from the FBI and one from the DOE's Office of Inspector General ("OIG"), while he was attending basic military training at Fort Benning, Georgia. This interview was conducted over the telephone at the Army's Criminal Investigative Division's ("CID") offices. Defendant Dorcely is alleged to have told FBI Special Agent Chadwick that he added Tyrone Wallace to the Dany Enterprises account, that he met Wallace about seven or eight months before the interview while selling cellular telephones, and that Wallace was a friend and not a relative.[4] *See* Government's Second Supplemental Response to Defendants' Motion for Severance under *Bruton* ("Gov't 2nd Supp.") at 1 (citing Attachment A (FBI Form 302 for an investigation conducted on April 18, 2000)).

The defendants have been charged with several criminal offenses, including conspiracy, a violation of 18 U.S.C. § 371, and conspiracy to commit money laundering, a violation of 18 U.S.C. § 1956(h). Of particular significance to the issue now before the Court is the allegation in the indictment that "[o]n or about March 15, 2000, defendant DANIEL DORCELY falsely stated to a Bank of America employee that defendant STATESON CLARENCE FRANCOIS was named 'Tyrone Wallace' and requested that he be added to the Dany Enterprise account under that name[,]" which has been identified as an overt act of both conspiracy counts charged in the indictment. *See* August 21, 2003 Superseding Indictment, Count I ¶ 19 (Overt Act ¶ 5), Count II ¶ 6 (incorporating overt acts one through fifty-four of Count I). And, of equal significance is the fact that defendant Dorcely is also charged with making a false statement, a violation of 18 U.S.C. § 1001, for

knowingly and willfully ma[king] a false, fictitious, and fraudulent material statement and representation concerning the identity of the person defendant DORCELY had added to the Dany Enterprises' account at Bank of America, in that defendant DORCELY stated that the person was not a relative, but a friend or buddy named Tyrone Wallace whom defendant DORCELY had met seven or eight months prior, when in truth, the person defendant DORCELY had added to the account was his cousin, Stateson Clarence Francois, a relative that defendant DORCELY had known for many years.

in the correct name of the dealership. *See* August 21, 2003 Superseding Indictment ¶ 19 (Overt Act ¶ 52).

3. At a June 24, 2003 hearing on this motion, the government acknowledged that two additional statements made on August 29, 2000 and August 30, 2002, by defendant Dorcely to the FBI were inadmissible because they implicated *Bruton* concerns. *See* Government's Submission in Response to Court Order Dated June 25, 2003 at 2 n. 1. However, the government maintains that the April 18, 2000 statement "is non-hearsay which, as a matter of law, can not violate *Bruton.*" *Id.*

4. The Court notes that the April 18, 2000 statement the government proposes to use is a redacted version of the statement with the irrelevant portions already excised by the Court pursuant to an earlier court ruling.

*Id.,* Count V. Thus, it is apparent that the same act—defendant Dorcely placing an individual by the name of "Tyrone Wallace" on the Dany Enterprises account—is predicate conduct for all three criminal offenses.

## II. *Legal Analysis*

■ The government seeks to introduce defendant Dorcely's April 18, 2000 statement "for a non-hearsay purpose—to prove that the statement itself was made[,] ... [as] Dorcely's description of Tyrone Wallace is a 'verbal act' which constitutes an element of the offense charged in Count V." Gov't 2nd Supp. at 2. Furthermore, the government asserts that defendant Francois' claim that the admission of this evidence would violate his constitutional rights under the Sixth Amendment's Confrontation Clause is without merit because the

> "admission of nonhearsay raises no Confrontation Clause concerns." Where an out of court statement is admitted for a nonhearsay purpose, the Confrontation Clause's protection for the right of cross-examination is satisfied by the presence on the stand of the witness who took the declarant's out of court statement.

*Id.* (quoting *United States v. Inadi,* 475 U.S. 387, 398 n. 11, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)) (citing *Tennessee v. Street,* 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)). The Court rejects the government's argument, as the case authority cited to by the government is clearly distinguishable from the instant case and therefore does not provide support for its position.

In *Tennessee v. Street,* the defendant was convicted of murder, in part, based upon the State's use of a confession that he had made to a Tennessee Sheriff. 471 U.S. at 409, 105 S.Ct. 2078. Street testi-

fied at his trial that his confession was coerced by the Sheriff, the substance of the confession having been derived from an accomplice's written confession after the Sheriff read the accomplice's written confession to Street and "directed [Street] to say the same thing." *Id.* at 411, 105 S.Ct. 2078. During the government's rebuttal, the trial court permitted the prosecutor to call the Sheriff as a witness and he denied that Street was read the accomplice's confession or coerced into repeating it. *Id.* As corroboration of the Sheriff's testimony concerning Street's confession, the trial court permitted the Sheriff to read the accomplice's confession to the jury, which was followed by two cautionary instructions to the jury from the court that the accomplice's confession was admitted "not for the purpose of proving the truthfulness of his statement, but for the purpose of rebuttal only." *Id.* at 411–12, 105 S.Ct. 2078. The prosecutor then elicited from the Sheriff testimony emphasizing the differences between respondent's confession and the accomplice's confession to demonstrate that the respondent's confession was not the product of the confession of the accomplice. *Id.* at 412, 105 S.Ct. 2078. In concluding that the accomplice's confession was properly admitted at Street's trial, the Supreme Court began its analysis by noting that the "nonhearsay aspect" of the accomplice's confession did not raise a Confrontation Clause concern because "[t]he Clause's fundamental role in protecting the right of cross-examination was satisfied by [the] Sheriff['s] ... presence on the stand. If respondent's counsel doubted that [the accomplice's] confession was accurately recounted, he was free to cross-examine the Sheriff." *Id.* at 414, 105 S.Ct. 2078 (internal citation omitted). As the Court noted, "the State's rebuttal witness against [Street] was not [the accomplice], but [the] Sheriff...." *Id.* Accordingly, there was no Confrontation

Clause concern because the accomplice's statement was not introduced "to prove what happened at the murder scene but to prove what happened when [Street] confessed...." *Id.* However, the Court was careful to point out the differences between what occurred in *Street* and in *Bruton.* *Id.* The *Street* Court noted that the trial court had instructed the jury twice not to consider the accomplice's confession for its truth and emphasized that

> [h]ad the prosecutor been denied the opportunity to present [the accomplice's] confession in rebuttal so as to enable the jury to make the relevant comparison, the jury would have been impeded in its task of evaluating the truth of [Street's] testimony and handicapped in weighing the reliability of his confession. Such a result would have been at odds with the Confrontation Clause's very mission—to advance the accuracy of the truth-determining process in criminal trials.

*Id.* at 415, 105 S.Ct. 2078 (internal quotation marks and citation omitted). The Court also stated that Street's confession was the "most important piece of substantive evidence" and that unlike *Bruton,* "there were no alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence[,]" *id.,* observing in a footnote that "[s]everance obviously was not an available alternative ... [as] respondent's trial had been severed from those of his codefendants[,]" *id.* at n. 7, 105 S.Ct. 2078.

Justice Brennan's concurrence in *Street,* with whom Justice Marshall joined, is also instructive. Justice Brennan noted that he concurred with the majority opinion "on the understanding that the trial court's limiting instruction is not itself sufficient to justify admission of the confession." *Id.* at 417, 105 S.Ct. 2078 (Brennan, J., concurring) (citing *Bruton,* 391 U.S. 123, 88 S.Ct. 1620). He went on to state that

> [t]he out-of-court confession is admissible for nonhearsay purposes in this case only because that confession was essential to the State's rebuttal of ... Street's defense and because no alternative short of admitting the statement would have adequately served the State's interest. With respect to the State's need to admit the confession for rebuttal purposes, it is important to note that [Street] created the need to admit the statement by pressing the defense that his confession was a coerced imitation of [the accomplice's] out-of-court confession.

*Id.* at 417–18, 105 S.Ct. 2078. Thus, the Supreme Court made clear in *Street* that the admission of the accomplice's confession did not raise a Confrontation Clause concern not only because the statement was being offered for a non-hearsay purpose and the giving of the trial court's limiting instruction, but also because the defendant "opened the door" to its admission by his testimony, which could be challenged only by permitting the prosecution to put before the jury the accomplice's confession so it could be compared with Street's confession. The Supreme Court was therefore addressing a markedly different situation in *Street* than what is now before this Court, which at the government's insistence, *inter alia,* remains a joint three co-defendant proceeding.[5]

---

5. The government's reliance on *United States v. Inadi,* 475 U.S. at 387, 106 S.Ct. 1121, is as equally unavailing and the Court need not address the substance of that case, as the Supreme Court made clear that

> [t]he reliability of the out-of-court statements is not at issue in this case. The Court of Appeals determined that whether or not the statements are reliable, their admission violated the Sixth Amendment because the Government did not show that

Aside from the Court's conclusion that the case authority relied upon by the government does not support its position, the Court is sufficiently concerned about the impact that would flow from admitting defendant Dorcely's April 18, 2000 statement that he "added Tyrone Wallace to the Dany Enterprises account," even if admitted solely for a non-hearsay purpose. While the government seeks to admit this statement for its non-hearsay value as proof of the false statement offense, *i.e.*, to prove that defendant Dorcely made the false statement, during the course of the trial the government will also be introducing other extrinsic evidence to establish that, as an overt act of both conspiracies, defendant Dorcely did in fact add an individual by the name of Tyrone Wallace to the Dany Enterprises account. Thus, defendant Dorcely's April 18, 2000 statement constitutes not only non-hearsay evidence that proves an element of Count V's false statement offense, *see* August 21, 2003 Superseding Indictment, Count V, but if misused by the jury could also be construed as substantive evidence, as it is proof of an overt act of both conspiracies, *see id.*, Count I ¶ 19 (Overt Act ¶ 5), Count II ¶ 6. And while the government may seek to introduce defendant Dorcely's April 18, 2000 statement solely for a non-hearsay purpose with respect to the false statement offense, the Court is sufficiently concerned that, notwithstanding a limiting in-

struction to the contrary, the jury in all likelihood will utilize this statement as evidence of the conspiracies. Therefore, because of this potential misuse of Dorcely's April 18, 2000 statement by the jury, the Court finds that it is necessary to consider whether the statement, which inculpates defendant Francois, would be admissible at a joint trial of these two defendants. *See* Fed.R.Evid. 403 (relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the jury ...."); *United States v. Long*, 328 F.3d 655, 662 (D.C.Cir.2003) (stating that Rule 403 "contemplates the thoughtful consideration of the trial court and leaves the admission of evidence to the sound discretion of the trial judge.") (citation omitted).

### (A) *Would the April 18, 2000 Statement be Admissible at a Joint Trial as an Overt Act of the Conspiracies?*

The question this Court is faced with resolving, in light of the above discussion, is whether defendant Francois' Sixth Amendment right "to be confronted with the witnesses against him" would be violated by admitting into evidence defendant Dorcely's April 18, 2000 statement that is not only a statement against Dorcely's penal interest,[6] but simultaneously inculpates

---

the declarant was unavailable to testify. The sole issue before the Court is whether that decision is correct.

*Id.* at 391 n. 3, 106 S.Ct. 1121. In a footnote, the *Inadi* Court surmised that "some of the out-of-court statements in th[at] case presumably could [have been] admitted without implicating the Confrontation Clause." *Id.* at 398 n. 11, 106 S.Ct. 1121 (citing *Street*, 471 U.S. at 414, 105 S.Ct. 2078).

**6.** A statement is against one's self-interest if "at the time of its making [it] ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person

in the declarant's position would not have made the statement unless believing it to be true." Fed.R.Evid. 804(b)(3). Defendant Dorcely does not seem to challenge the admissibility of his April 18, 2000 statement, acknowledging through his attorney at one of the motions hearings that the statement is against his penal interest, as it violates federal banking laws to knowingly place a fictitious name on a federally insured banking account. The Court will not spend time addressing the admissibility of this statement against Dorcely under Rule 804(b)(3) because, as it explains below, the statement is inadmissible because

defendant Francois. The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court stated that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 845, 110 S.Ct. 3157; *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ("The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the Clause] is the right of cross-examination.' ") (citing *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)). In discussing the differences between the hearsay doctrine and the Confrontation Clause, the Supreme Court has stated:

> Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule.

it violates defendant Francois' Confrontation Clause rights.

7. The Court is operating under the assumption that defendant Dorcely will not testify at this joint trial, making him unavailable within the meaning of the Federal Rules of Evidence, *see* Fed.R.Evid. 804(a), and thus precluding defendant Francois from cross-examining

*Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In this case, the Court is faced with a situation in which the government seeks to introduce a declarant's out-of-court statement against an accomplice at a joint trial, where the declarant presumably will be unavailable,[7] and therefore the Court "must decide whether the [Confrontation] Clause permits the government to deny [defendant Francois] his usual right to force the declarant 'to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth.' " *Lilly v. Virginia,* 527 U.S. 116, 124, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (footnote and citation omitted)) (plurality opinion).

The watershed case in this area of constitutional law is the Supreme Court's decision in *Bruton.* The *Bruton* case involved a joint trial of two defendants for armed robbery of a post office, where one of the defendants had confessed to the crime and implicated his co-defendant Bruton. 391 U.S. at 124, 88 S.Ct. 1620. While neither of the defendants testified at their joint trial, the co-defendant's confession was introduced through the testimony of a postal inspector, and the trial court instructed the jury that the confession could only be considered as evidence against the declarant, but not Bruton. *Id.* at 124–25 & n. 2, 88 S.Ct. 1620. In reversing Bruton's conviction, the Supreme Court found that his Confrontation Clause rights had been infringed, reasoning that

him. Obviously, however, should defendant Dorcely decide to testify, the Confrontation Clause would not be implicated. But this potential is beyond the Court's ability to predict at this time. Accordingly, in deciding whether Dorcely's statement is admissible, the Court must assume that he will be unavailable.

there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Bruton,* 391 U.S. at 135–36, 88 S.Ct. 1620 (citations and footnotes omitted).

Following *Bruton,* a split among the Circuits arose over whether there was a recognized exception to *Bruton* when both the defendant and co-defendant had confessed to the crime charged and the confessions were factually consistent or "interlocked." *See Graham v. Hoke,* 946 F.2d 982, 989 (2d Cir.1991) (discussing the circuit split over whether there was a recognized exception to *Bruton* for "interlocking" confessions). And this consideration has implications here because defendant Francois also acknowledged to the authorities essentially the same information Dorcely provided about the name Tyrone Wallace being added to the bank account. *See* Government's Omnibus Response to Defendants' Motions and Points and Authorities in Support Thereof ("Gov't Resp."), Attachment I

(FBI Form 302 for an investigation conducted on April 13, 2000). In *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), the Supreme Court sought to resolve this conflict among the circuits, issuing a plurality opinion authored by then Justice Rehnquist, which concluded that the concerns in *Bruton* are not implicated when each defendant has independently confessed to the offense and those confessions are factually consistent. *Id.* at 73, 99 S.Ct. 2132. Justice Rehnquist predicated his ruling on the proposition that

> [s]uccessfully impeaching a codefendants's confession on cross-examination would likely yield small advantage to the defendant whose own admission of guilt stands before the jury unchallenged. Nor does the natural "motivation to shift blame onto others," recognized by the *Bruton* Court to render the incriminating statements of codefendants "inevitably suspect" require application of the *Bruton* rule when the incriminated defendant has corroborated his codefendant's statements by heaping blame onto himself.

*Id.* (citations omitted). However, the plurality opinion in *Parker* was to be short lived. In 1987, the Supreme Court, in a five to four decision, adopted the concurrence authored by Justice Blackmun in *Parker. Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987) ("We adopt the approach espoused by Justice BLACKMUN."). In *Cruz,* the Court stated that

> what the "interlocking" nature of the codefendant's confession pertains to is not its *harmfulness* but rather its *reliability:* If it confirms essentially the same facts as the defendant's own confession it is more likely to be true. Its reliability, however, may be relevant to whether the confession should (despite

the lack of opportunity for cross-examination) be *admitted as evidence* against the defendant, but cannot conceivably be relevant to whether, assuming it cannot be admitted, the jury is likely to obey the instruction to disregard it, or the jury's failure to obey is likely to be inconsequential. The law cannot command respect if such an inexplicable exception to a supposed constitutional imperative is adopted. Having decided *Bruton*, we must face the honest consequences of what it holds.

*Id.* at 192–93, 107 S.Ct. 1714 (internal citation omitted). The *Cruz* Court concluded that "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." *Id.* at 193, 107 S.Ct. 1714 (internal citation omitted). Of particular significance to this case, the *Cruz* Court went on to state that "[o]f course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him (assuming the 'unavailability' of the codefendant) despite the lack of opportunity for cross-examination. . . ." *Id.* at 193–94, 107 S.Ct. 1714. (citations omitted).

■ In *United States v. Wilson*, 160 F.3d 732 (D.C.Cir.1998), the District of Columbia Circuit stated that

[u]nder *Cruz*, a court may, in a joint trial, admit an out of court confession or statement against penal interest by one defendant that inculpates a codefendant if the statement is "directly admissible" against the other defendant. Generally, such a statement will be directly admissible if it is reliable, as defined in *Lee [v.*

*Illinois* ] and in *Ohio v. Roberts*, and if the declarant is unavailable to testify.

*Wilson*, 160 F.3d at 740 (internal citations omitted). The Circuit Court went on to observe that

[i]n *Roberts*, the [Supreme] Court noted that a statement is admissible and does not violate the Confrontation Clause where there is a necessity (*i.e.*, the witness is unavailable) and the statement bears sufficient "indicia of reliability" in that it falls within a "firmly rooted hearsay exception," or has "particularized guarantees of trustworthiness" such that "there is no material departure from the reason for the general rule."

*Id.* (quoting *Roberts*, 448 U.S. at 62–67, 100 S.Ct. 2531). Thus, in determining whether a statement against penal interest by one defendant that inculpates a codefendant is admissible under the Confrontation Clause, a court must consider: (1) whether the evidence falls within a "firmly rooted hearsay exception" and, if not, (2) whether the statement contains "particularized guarantees of trustworthiness" such that the opportunity for cross-examination would be expected to add little, if anything, to the statement's reliability. *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.

(a) *Does the April 18, 2000 Statement Fall Within a Firmly Rooted Hearsay Exception?*

In *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the Supreme Court stated that classifying a statement as a " 'declaration against penal interest' . . . defines too large a class for meaningful Confrontation Clause analysis." *Id.* at 544 n. 5, 106 S.Ct. 2056. Instead, the Court separated "statements against penal interest" into three separate categories: "(1) as voluntary admissions against the declarant; (2) as exculpatory evidence offered by a defendant who claims that the declarant

committed, or was involved in, the offense; and (3) as evidence offered by the prosecution to establish the guilt of an alleged accomplice of the declarant." *Lilly*, 527 U.S. at 127, 119 S.Ct. 1887. Here, it is the third category of statements against penal interest that is implicated by the government's efforts to introduce defendant Dorcely's April 18, 2000 statement that inculpates defendant Francois. A plurality in *Lilly* concluded that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted hearsay exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Id.* at 134, 119 S.Ct. 1887 (footnoted omitted). The plurality based its conclusion on past "cases [that] consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.'" *Id.* at 133, 119 S.Ct. 1887 (quoting *White v. Illinois*, 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). However, equally significant are the concurrences by Justice Thomas and Chief Justice Rehnquist, with whom Justices O'Connor and Kennedy joined. These four justices agreed that the Confrontation Clause does not impose a "blanket ban on the government's use of accomplice statements that incriminate a defendant...." *Id.* at 143–147, 119 S.Ct.

1887. This Court's assessment of whether "statements against penal interest" fall within a "firmly rooted hearsay exception" as a class or whether only certain statements that fall within the class can qualify under this exception upon a case-by-case analysis must be left for another day, as the court of appeals for this circuit chose not to tackle this issue. *Wilson*, 160 F.3d at 740 ("After *Lee*, the question remains whether statements against penal interest can qualify as a firmly rooted hearsay exception as a class or whether each statement must qualify through its particularized guaranties of trustworthiness. We do not address this question because we conclude that the particular statements admitted in the instant case were reliable."). Thus, as the Circuit Court did in *Wilson*, this Court will focus on whether defendant Dorcely's April 18, 2000 statement bears sufficient indicia of reliability to merit its admissibility.

(b) ***Does the April 18, 2000 Statement Have Sufficient Indicia of Reliability to be Admissible Against Defendant Francois?***

This Court concludes that the April 18, 2000 statement, wherein defendant Dorcely admitted adding the name "Tyrone Wallace" to the Dany Enterprises account,[8] does not have a sufficient "showing of particularized guarantees of trustworthiness" to merit its admissibility against defendant Francois.[9] In *Idaho v. Wright*, 497 U.S.

---

**8.** With respect to the Confrontation Clause analysis in regards to the admissibility of the statement against defendant Francois, the Court will only focus on this part of the April 18, 2000 statement, as this is the only part of the statement that incriminates Francois. *See Bruton*, 391 U.S. 123, 88 S.Ct. 1620 (holding that a defendant is deprived of his rights under the Confrontation Clause when his co-defendant's *incriminating* confession is introduced at their joint trial).

**9.** To the extent there may have been a suggestion during a hearing on this motion that a defendant's Confrontation Clause concerns are not implicated unless a co-defendant's statement facially implicates the defendant, and therefore because the statement refers to "Tyrone Wallace" and not specifically to defendant Francois by name, that Confrontation Clause concerns do not exist, this Court rejects that proposition. Here, the government has proffered that it will be introducing a wealth of evidence which establishes that de-

805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court found that the " 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances, but we think the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 819, 110 S.Ct. 3139. Thus, the *Wright* Court concluded:

> To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial. . . . In short, the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility.

*Id.* at 822–23, 110 S.Ct. 3139. Later in *Lilly*, the Supreme Court once again stated that "[t]o be admissible under the Confrontation Clause ... hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." 527 U.S. at 138, 119 S.Ct. 1887 (citing *Wright,* 497 U.S. at 822, 110 S.Ct. 3139). Thus, while the government asserted in *Lilly* that other evidence introduced at trial corroborated portions of the defendant's statements, the Court stated that "[w]e have squarely rejected the notion that 'evidence corroborating the truth of a hearsay statement' may properly support a finding that the statement bears 'particularized guarantees of trustworthiness.' " *Id.* Hence, in this case, even though the government has proffered that it will be able to introduce Bank of America records that establish that the name "Tyrone Wallace" was added to the Dany Enterprises account by defendant Dorcely, ·*see* Gov't Ex. 21–24, such evidence cannot be considered in assessing the inherent trustworthiness of defendant Dorcely's April 18, 2000 statement.

Looking at the totality of the relevant circumstances surrounding the making of defendant Dorcely's April 18, 2000 statement, the Court is unable to conclude for several reasons that the statement is sufficiently reliable to merit its admissibility at a joint trial with defendant Francois. As mentioned above, while at Fort Benning,

---

fendant Francois and "Tyrone Wallace" are one in the same. Thus, by the government's own admission, doubt will not exist as to who Dorcely was placing on the account when he used the name Tyrone Wallace. A review of recent opinions by various circuit courts of appeals suggests, at least by implication, that the introduction of a statement containing a defendant's alias sufficiently implicates *Bruton* and the Confrontation Clause. *See, e.g., United States v. Yousef,* 327 F.3d 56, 149 (2d Cir.2003) (noting that the district court properly denied severance by ordering that a statement be redacted to eliminate any direct reference to the defendant's alias, which had been set forth as an alias in the indictment); *United States v. Hoover,* 246 F.3d 1054, 1059

(7th Cir.2001) (noting that the substitution of aliases based on occupations is improper and failed to conceal the defendants' identities any more "than the substitution of 'Mark Twain' for 'Samuel Clemens' conceals the author."); *United States v. Verduzco–Martinez,* 186 F.3d 1208, 1213–14 (10th Cir.1999) (affirming the district court's substitution of a neutral pronoun in place of the defendant's alleged alias); *United States v. Beale,* 921 F.2d 1412, 1425 (11th Cir.1991) (finding a *Bruton* violation where the trial court admitted a co-defendant's statement that he knew the defendant by his alias "Bee" and the defendant claimed he was not "Bee" and had moved for severance on the grounds that this statement violated *Bruton* ).

Georgia for basic training as a member of the Maryland Army National Guard, a special agent for the Army's CID arranged for the telephonic interview of Dorcely by special agents of the FBI and the OIG. Gov't 2nd Supp., Attach. 1. In assessing the reliability of statements under the Confrontation Clause, courts place great emphasis on the setting and to whom statements were made. For example, in *Lilly*, the Supreme Court commented that "[w]hen a suspect is in custody for his obvious involvement in serious crimes, his knowledge that anything he says may be used against him militates against depending on his veracity." 527 U.S. at 138, 119 S.Ct. 1887. The *Lilly* Court also concluded that the defendant "had a natural motive to attempt to exculpate himself as much as possible" under such circumstances. *Id.* at 139, 119 S.Ct. 1887; *Lee*, 476 U.S. at 541, 106 S.Ct. 2056 ("[T]he arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence."). Therefore, when conducting a Confrontation Clause analysis, a custodial or police setting has been found to be significantly different than circumstances in which a declarant makes a statement in a private setting. Thus, in *Padilla v. Terhune*, 309 F.3d 614 (9th Cir.2002), the Ninth Circuit stated that "when an accomplice makes a statement incriminating the defendant in private, to a friend, without mitigating his own role in the crime, the circumstances surrounding the statement provide a 'particularized guarantee of trustworthiness,' which satisfies the Confrontation Clause." *Id.* at 618; *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir.2000) (upholding the admission of hearsay testimony that inculpated both the declarant and the defendant because the circumstances surrounding the making of the statement were found to be trustworthy as they were made to the declarant's son in confidence and not to the police). In sum, the *Lilly* Court commented that

> the historical underpinnings of the Confrontation Clause and the sweep of our prior confrontation cases offer one cogent reminder: It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old *ex parte* affidavit practice—that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

527 U.S. at 137, 119 S.Ct. 1887.

In this case, the Court finds the circumstances surrounding the utterance of the April 18, 2000 statement by defendant Dorcely akin to the situation *Lilly* described above, as law enforcement officials were clearly "involved in the statement's production." *Id.* Not only were special agents from the FBI and the OIG conducting the telephonic interview with Dorcely, which had been arranged by a law enforcement official with the military, but the interview was conducted in a military law enforcement office. Clearly, under these circumstances, defendant Dorcely had reason to shift blame or suggest his innocence during the April 18, 2000 interview when confronted for the first time with the fact that a formal investigation had begun into the Dany Enterprises account roughly two weeks after DOE funds had allegedly been illegally diverted into that account. And that is exactly what Dorcely apparently tried to do by admitting that he added another name to his business account but

indicating that he only had a short lived and casual relationship with that individual. By implication, Dorcely was seemingly trying to distance himself from the person he placed on the account so he could shift blame to that person for illegal activity related to the account without implicating himself in the activity. And, it is noteworthy that this interview was conducted in the CID offices while the defendant was undergoing basic training. So, while defendant Dorcely was clearly in a position where he would naturally attempt to shift blame or declare his innocence to the FBI and the OIG, he also presumably would have been concerned about jeopardizing his membership in the military.

In addition, the Court finds it significant that defendant Dorcely's April 18, 2000 statement itself is rife with falsehoods. Once again, Dorcely essentially stated that he added Tyrone Wallace to the Dany Enterprises account, that he met Wallace about seven or eight months ago while selling telephones, and that Wallace was a friend and not a relative. *See* Gov't 2nd Supp. at 1 (citing Attach. A). Putting aside the part of the statement that inculpates defendant Francois through the use of Francois' alias "Tyrone Wallace," the remaining portions of the statement are totally untrue, as defendant Francois is actually defendant Dorcely's cousin, Gov't Resp., Attachment N (FBI Form 302 from an Investigation on August 30, 2002), and he knew him at least for a minimum of several years. Gov't Resp., Attachment Q (FBI Form 302 from an Investigation on August 2, 2000) In fact, defendant Dorcely admitted that he lied on April 18, 2000 "because he was under stress due to Basic Training and because the FBI was speaking with him." Gov't Resp., Attachment N. Clearly then, when even the government realizes that defendant Dorcely's April 18, 2000 statement is mixed with falsehoods, the Court cannot conclude that

this statement "bears 'particularized guarantees of trustworthiness[,]' " *Lilly*, 527 U.S. at 138, 119 S.Ct. 1887, for it to be admissible against a co-defendant at a joint trial.

Finally, the Court notes that defendant Dorcely's April 18, 2000 statement "interlocks" with a statement that defendant Francois made on April 13, 2000, which the Court has already ruled admissible against Francois. In that statement, defendant Francois informed the FBI that about one month earlier he had been placed on the Dany Enterprises bank account at Bank of America and that he had changed his name from Francois to Wallace. *See* Gov't Resp., Attachment I. This statement is virtually identical to defendant Dorcely's April 18, 2000 statement Dorcely made about adding "Tyrone Wallace" to the Dany Enterprises account. These interlocking statements are also supported by a wealth of other evidence the government proffered it intends to introduce at trial to establish that defendant Dorcely added "Tyrone Wallace" to the Dany Enterprises Bank of America account and that the name "Tyrone Wallace" was an alias of defendant Francois. Specifically, the government has proffered that it will be able to introduce the Bank of America records that establish the addition of "Tyrone Wallace" to the Dany Enterprises account by defendant Dorcely. *See* Gov't Ex. 21–24. In addition, the Court has already ruled that the government may introduce an April 3, 2000 application for a District of Columbia Driver's License by defendant Francois in the name of "Tyrone Wallace" and that defendant Francois used the name "Tyrone Wallace" when he prepared an automobile accident report on April 13, 2000. *See* June 11, 2003 Order. Furthermore, the government has indicated that it will seek to introduce various types of evidence that

will establish that defendant Francois and "Tyrone Wallace" are the same person, including photocopies of Tyrone Wallace's Driver's License, *see* Gov't Ex. 84, 121, 134. Finally, the government indicates that it will elicit testimony at trial from two individuals, who have both already testified at an identification suppression hearing, who worked for the car dealerships where defendant Francois is alleged to have gone on March 31, 2000 and April 4, 2000, and participated in the purchase and attempted purchase of vehicles using identification in the name of "Tyrone Wallace." However, none of this independent evidence can be considered by the Court in assessing the reliability of Dorcely's statement pursuant to the Confrontation Clause. As discussed above, the Supreme Court made clear in *Wright* and *Lilly* that this Court must confine its assessment to the circumstances actually surrounding the making of the statement and must not consider other admissible evidence.[10] *Lilly*, 527 U.S. at 138, 119 S.Ct. 1887; *Wright*, 497 U.S. at 819, 110 S.Ct. 3139.

Accordingly, for all of the aforementioned reasons, the Court must conclude that "[i]t is abundantly clear that neither the words that [defendant Dorcely] spoke nor the setting in which he was questioned provides any basis for concluding that his comments regarding [defendant Francois'] guilt were so reliable that there was no need to subject them to adversarial testing in a trial setting." *Id.* at 139, 119 S.Ct. 1887.

### III. *Conclusion*

In consideration of the April 18, 2000 statement made by defendant Dorcely that implicates defendant Francois, this Court, for the reasons expressed in this Opinion, must conclude that this statement is inadmissible in a joint trial involving these two defendants. While the government contends that this statement is admissible against defendant Dorcely solely for a non-hearsay purpose, *i.e.*, as a " 'verbal act' of an element of the offense charged in Count V[,]" this Court finds that in all likelihood the jury will be unable to adhere to a limiting instruction that would tell the jury to limit its consideration of the statement to defendant Dorcely's guilt of the offense of making a false statement in Count V. Rather, because the statement is so intertwined with other evidence that the government will introduce to establish that Dorcely's identical conduct was an overt act of the conspiracy charges against defendant Francois, it is more likely that the jury would not limit its use of the statement as instructed. Therefore, the Court must decline the government's request to use Dorcely's April 18, 2000 statement in this joint trial because its introduction would violate defendant Francois' Sixth Amendment Confrontation Clause rights.

---

**10.** A recent *en banc* opinion by the Supreme Court of Washington seems to suggest that an "interlocking" confession by itself may provide an adequate indicia of reliability in a Confrontation Clause analysis, which this Court finds to be inconsistent with binding Supreme Court precedent. In *State v. Crawford*, 147 Wash.2d 424, 54 P.3d 656 (2002) (*en banc*), the court stated that

> [b]ecause a codefendant's confession is presumed unreliable, the statement must either meet a firmly rooted exception to the hearsay rule or provide some indicia of reliabili-

ty, such as interlocking with the defendant's own confession ... As [we previously] recognized ... [w]hen a codefendant's confession is virtually identical [i.e., interlocks] to that of a defendant, it may be deemed reliable. Hence an interlocking confession will serve the same purpose as the nine-factor test in assessing reliability.

*Id.* at 437, 54 P.3d 656 (internal quotations and citations omitted). The United States Supreme Court has granted certiorari in this case. *See Crawford v. Washington*, —— U.S. ——, 123 S.Ct. 2275, 156 L.Ed.2d 129 (2003).

## ORDER

Upon consideration of the admissibility of the defendant Dorcely's April 18, 2000 statement at the trial of the above-captioned case, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby

**ORDERED** that defendant Dorcely's April 18, 2000 statement is inadmissible in a joint trial of defendants Dorcely and Francois.